IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| George and Nancy White, | Case No. 3:14 CV 1277 |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER REMANDING |
| -vs- | ACTION TO STATE COURT |
| Richard P. Sandru, et al. | |
| Defendants. | JUDGE JACK ZOUHARY |

## INTRODUCTION

At this stage, this case is about consent and discretion. Plaintiffs George and Nancy White ("the Whites") move to remand this action to state court, arguing Defendant Continental Casualty Co.'s ("Continental") notice of removal is defective because it lacks Defendant Richard Sandru's ("Sandru") consent to removal. Even if procedurally proper, the Whites argue this Court ought to decline to hear this case in its exercise of discretionary declaratory judgment jurisdiction.

While Continental need not obtain Sandru's consent to removal, the factors that guide this Court's exercise of discretion weigh in favor of remand.

## BACKGROUND

The Whites allege Sandru, their former investment advisor, committed wrongful acts by mishandling their retirement funds (Doc. 1-3 at ¶ 3). In March 2013, a Financial Industry Regulatory Authority arbitration panel awarded the Whites $90,834.00 in compensatory damages, plus interest, against Sandru (Doc. 1-1 at 12, 18). In September 2013, the Whites obtained confirmation of the arbitration award from the Lucas County Court of Common Pleas (Doc. 1-2). In the course of confirming the award, that court noted that Sandru had been properly served.

Because Sandru did not pay the award within thirty days, the Whites filed in the court of common pleas a "Supplemental Complaint to Obtain Payment of Judgment against Richard P. Sandru." For the first time, they named Continental as a Defendant (Doc. 1-6). Defendant Cambridge Investment Res., Co. ("Cambridge"), Sandru's former employer (Doc. 1-3 at ¶ 3), was a party to the Original Complaint and remains a party to the Supplemental Complaint. In the Supplemental Complaint, the Whites further allege Cambridge, "on its behalf and on behalf of former and current registered representatives," was the insured on an Errors & Omissions policy ("E&O policy") (Doc. 1-6 at ¶16). Continental is the insurer.

On June 13, 2014, Continental filed a Notice of Removal. In that Notice, Continental states that "Cambridge . . . consented to removal," and that because Sandru did not appear at the arbitration or confirmation proceedings, Continental did not need his consent to removal (Doc. 1 at ¶15). The Whites now seek remand and an award of fees and costs incurred briefing this Motion.

### STANDARD OF REVIEW

"Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand." *Mehney-Egan v. Mendoza*, 124 F. Supp. 2d 467, 470 (E.D. Mich. 2000) (quotation marks omitted). Defendants bear the burden of establishing removal is appropriate. *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989). This Court "must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the non removing party." *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (quotation marks and ellipsis omitted).

**DISCUSSION**

**Consent**

The federal removal statute includes a "rule of unanimity" for removal of a multidefendant action in which original jurisdiction exists solely because of party diversity. "[A]ll defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). A defendant may signal consent within thirty days of removal, a time period that runs from varying triggering events. *See id*. §§ 1446(b)(2)(B)–(C). Here, Sandru has not only failed to consent to removal, he has failed to participate in any way in this lawsuit, state court proceedings, or the arbitration.

"[N]ominal defendants, those against whom no real relief is sought, need not join in the [removal] petition." *Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 833 (8th Cir. 2002) (quotation marks omitted). The Sixth Circuit has not addressed how nominal party status is assessed in this context. The general practice has been to identify a nominal defendant using fraudulent-joinder principles. *See Creed v. Virginia*, 596 F. Supp. 2d 930, 933–35 (E.D. Va. 2009) (surveying nominal-party consent-to-removal caselaw). "[T]he question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved" as to Sandru. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quotation marks omitted).

Judicial proceedings began with an action against the purported insureds -- Sandru and Cambridge. "[W]ithout a judgment [against the insured], R.C. 3929.06(B) precludes a direct action against the unexhausted proceeds from any liability-insurance policies and conditions the filing of a supplemental complaint against the insurer upon the entry of a final judgment." *In re All Cases Against Sager Corp.*, 132 Ohio St. 3d 5, 14 (2012). And so the Whites obtained a liability judgment against Sandru, in the form of a confirmed arbitration award.

3

The Whites argue Sandru remains a proper party to the supplemental complaint -- and his consent to removal is therefore essential -- because "the named insured/employer who contracted with the insurance carrier [is] an essential party to the supplemental complaint" when "outstanding issues of fact [exist that were] not reached in the underlying action but which could impact whether coverage existed for the tortfeasor employee" (Doc. 16 at 8 (citing *Hammon v. McLaughlin,* 6 Ohio St. 3d 227 (1983)). And the Whites identify questions of fact, unresolved in the original proceedings, that they believe warrant keeping Sandru a party to supplemental proceedings. Whether Sandru's conduct is covered under the E&O policy depends (in part) on Sandru's mental state when he mishandled the Whites' retirement funds.

*Hammon* has been read narrowly since it was decided. *See Doepker v. Everest Indem. Ins. Co.*, 2008 WL 163606, at *4 (N.D. Ohio 2008) (explaining *Hammon* "has not been cited for a broader proposition in the examination of a supplemental complaint under [Section] 3929.06, nor has it been cited for the proposition that an insured always or necessarily has the right to participate in the supplemental proceeding."). *Hammon* also interpreted a former version of the supplemental complaint statute, which differs in material respects from the amended statute. Both Ohio federal district courts to examine this question agree: the purported insured is not a proper party to a supplemental complaint. *See Elkins v. Am. Intern. Special Lines Ins. Co.*, 611 F. Supp. 2d 752, 758 (S.D. Ohio 2009); *Doepker*, 2008 WL 1636066, at **3–5.

The statutory language supports that conclusion. Historically, a judgment creditor filed a supplemental complaint "in the action in which said [liability] judgment was rendered, in which the insurer is made new party defendant." *Hammon*, 6 Ohio St. 3d at 229 (quoting R.C. § 3929.06 (1983)). Now, however, the statutory text suggests the original and supplemental proceedings are separate civil actions: "the civil action based on the supplemental complaint shall proceed against the

4

insurer in the same manner as the original civil action against the judgment debtor." R.C. § 3929.06(A)(2). Further, when the judgment creditor files a supplemental complaint, he or she "commences," not continues, "a civil action . . . against [the] insurer." *Id.* § 3929.06(C). "[T]he word 'may' within the statute indicates that a judgment creditor is merely permitted -- not mandated -- to file its [supplemental complaint] in the same court pronouncing judgment" on a tortfeasor's liability. *Benahmed v. Houston Cas. Co.*, 486 F. App'x 508, 512–13 (6th Cir. 2012). Finally, the statutory direct-action rule now explains that a judgment creditor can pursue the tortfeasor's insurer only after entry of judgment in favor of the judgment creditor in "the *distinct* civil action for damages between the plaintiff and an insured tortfeasor." R.C. § 3929.06(B) (emphasis added). *See also Estate of Heintzelman v. Air Experts, Inc.*, 126 Ohio St. 3d 138, 141 (Ohio 2010) (explaining R.C. § 3929.06 "allows plaintiffs who are awarded damages at trial to file a posttrial, supplemental complaint against the judgment debtor's insurer to recover damages covered under the judgment debtor's insurance policy.").

Setting aside reliance on *Hammon*, the Whites fail to show Sandru is a necessary party to Supplemental Complaint proceedings. This phase of the litigation begins with Sandru liable for the entirety of his judgment. It will end with Sandru in the same position, the only possible change to the current liability landscape being that Continental, Cambridge, or both, may also be liable for the judgment. Sandru has only a "practical interest in the outcome of [this] declaratory judgment action," not a legal one. *Driscoll v. Austintown Assoc.*, 42 Ohio St. 2d 263, 273 (1975).

Because supplemental complaint proceedings are distinct from the original action in which Sandru's liability was confirmed, and because only the purported insurer is a proper party to the supplemental complaint, Sandru's failure to consent to removal is immaterial.

5

**Declaratory Judgment Jurisdiction**

Cambridge argues that because the Supplemental Complaint "does not reference or contemplate any claim under the [federal] Declaratory Judgment Act," this Court has no option but to adjudicate this case on the merits (Doc. 15 at 11–12). But the failure to specifically include such a claim does not matter. "The operation of the Declaratory Judgment Act[ 28 U.S.C. § 2201] is procedural only." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (quotation marks omitted). Under traditional *Erie* principles, this Court applies caselaw construing Section 2201 when deciding whether to exercise jurisdiction over a removed declaratory judgment action. *See Clifford v. Church Mut. Ins. Co.*, 2013 WL 6199265, at \*\*2–6 (S.D. Ohio 2013) (report and recommendation) (applying the *Grand Trunk R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323 (6th Cir. 1984) factors to an R.C. § 3209.06 action removed to federal court on the basis of party diversity).

But Defendants further argue that the Whites included *no* claim for declaratory relief in the Supplemental Complaint -- arising under either Section 2201 or its Ohio counterpart, R.C. § 2721.02. Defendants style the Supplemental Complaint as an action for money damages, but Ohio law holds otherwise: the Supplemental Complaint is "an action only to determine if [an insurer] [i]s obligated to pay its contractual limits of its liability insurance policy . . . to . . . satisfy a judgment wherein the amount of damages had already been judicially ascertained." *Patterson v. Tice*, 91 Ohio App. 3d 414, 419 (1993). The arbitration panel already determined the extent of the Whites' damages attributable to Sandru. The Supplemental Complaint only asks whether Continental or Cambridge is liable for the $90,000 judgment.

**Relevant Factors**

Five factors guide this Court's discretionary declaratory judgment jurisdiction:

(1) whether the declaratory action would settle the controversy;

6

>   (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
>   (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata;
>
>   (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
>   (5) whether there is an alternative remedy which is better or more effective.

*Travelers Indem. Co. v. Bowling Green Prof'l Assoc., PLC*, 495 F.3d 266, 271 (6th Cir. 2007) (quotation marks omitted). The fourth factor, federal-state court friction, is analyzed by applying three subfactors:

>   (1) whether the underlying factual issues are important to an informed resolution of the case;
>
>   (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
>   (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 814–15 (6th Cir. 2004).

**Factors 1 & 2 -- Settling the Controversy and Clarifying Legal Relations.** Defendants contend there is no underlying or "parallel" proceeding in state court between the Whites on the one hand, and Sandru, Cambridge, and Continental on the other. However, the Whites filed a similar action in state court against (among other defendants) Ameriprise Financial Services, Inc. *White v. LPL Fin. Corp.*, G-4801-CI-201301023 (Lucas Ct. Com. Pl. 2013). The Whites allege Sandru, over thirteen years, defrauded them "while an agent or employee of three *different* broker-dealers," including Ameriprise and, later, Cambridge (Doc. 1-1 at ¶ 3) (complaint in original proceedings) (emphasis added). *See also* Doc. 1-1 at ¶ 14 (noting Cambridge employed Sandru from 2009 to 2011). Coverage may turn on when Sandru committed the various fraudulent acts -- for instance, did

7

he provide appropriate investment services to the Whites during his time with Ameriprise and commit all acts of fraud between 2009–11? Moreover, in the event either or both E&O policy is deemed to cover Sandru's judgment, contribution issues may arise. Judicial economy and efficiency is best served by having a single judge coordinating both of these cases to avoid duplicative or conflicting outcomes. Factors 1 and 2, often considered together, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008), weigh slightly in favor of this Court declining to exercise its declaratory judgment jurisdiction.

**Factor 3 -- Procedural Fencing**. Concerns of "procedural fencing" arise when the federal-court plaintiff files a declaratory judgment action prior to, during, or after a state court coercive action between the same parties, either "racing" to judgment or attempting to overturn an earlier, unfavorable state-court ruling. *See, e.g.*, *Grand Trunk W. Rail Co.*, 746 F.2d at 326 ("Grand Trunk simply seeks to obtain in this lawsuit a judgment that overturns [a state court's] earlier order regarding Grand Trunk's indemnity claim."). Because there is no indication of procedural fencing in the context of this case, this factor is neutral. *Travelers Indem. Co.*, 495 F.3d at 272 ("Although no improper motive prompted this action, [the procedural-fencing factor] is neutral.").

**Factor 4 -- Federal-State Court Friction.** Whether this Court's exercise of its discretionary declaratory judgment jurisdiction would "increase friction with the state courts and unduly encroach on state authority" depends on three subfactors. *Aspen Ins. UK Ltd. v. Murriel-Don Coal, Inc.*, 793 F. Supp. 2d 1010, 1016–17 (E.D. Ky. 2011). First, "sometimes resolution of the [insurance coverage] issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court." *Scottsdale Ins. Co.*, 513 F.3d at 560. The Whites point to possible tension between determinations in this case and in the Ameriprise action. But again, the Ameriprise action concerns the liability of a firm that employed Sandru at an earlier time than Cambridge, under

8

an E&O policy distinct from the Continental policy. No state court likely will make factual determinations relating to Sandru's treatment of the Whites' funds while he was a Cambridge employee, so there is small chance of conflict in the context of factfinding.

The second subfactor, "whether the state trial court is in a better position to evaluate those factual issues than is the federal court," similarly is neutral. *Id.* Where, as here, state law controls, a state court is in a "better position to apply and interpret its law on these issues." *Travelers Indem. Co.*, 495 F.3d at 272. *See also Aspen Ins. UK Ltd.*, 793 F. Supp. 2d at 1016 (reading relevant caselaw to hold state courts are always better-placed to resolve questions of state law, novel and routine alike).

Under the third subfactor, there is no great federal interest in determining whether the E&O policy, interpreted under state law, extends to Sandru's conduct while a Cambridge employee. On the contrary, "States regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Bituminous Cas. Corp.*, 373 F.3d at 815 (quotation marks and brackets omitted). Keeping this case would deprive a state court of the opportunity to decide state-law questions presented in the Supplemental Complaint. The "state-federal court friction" factor weighs slightly in favor of remand.

**Factor 5 -- Alternative Remedies**. There appears to be no alternative remedy for the Whites in state court, other than the declaratory judgment they now seek. Under Ohio law, a judgment creditor may tap the unexhausted proceeds of a judgment debtor's insurance policy through a declaratory judgment action, initiated as a standalone action under R.C. § 2721.02 or as a supplemental action under R.C. § 3929.06. *See Estate of Heintzelman*, 126 Ohio St. 3d at 140–41. This factor weighs in favor of exercising federal declaratory judgment jurisdiction.

9

"[T]he Sixth Circuit [has] warned district courts not to exercise jurisdiction over a declaratory judgment action 'unless it serves a useful, practical purpose.'" *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 792 (E.D. Ky. 2008) (quoting *Panhandle E. Pipe Line Co. v. Mich. Consol. Gas Co.*, 177 F.2d 942, 944 (6th Cir. 1949)). Considered together, Factors 1, 2, and 4 weigh in favor of declining to exercise declaratory judgment jurisdiction; Factor 3 is neutral; and Factor 4 weighs slightly in favor of exercising declaratory judgment jurisdiction. With a related case pending in state court, remand allows both cases to proceed in the same court before a single judge.

## CONCLUSION

The Whites' Motion to Remand (Doc. 10) is granted. While Sandru, a nominal Defendant, need not consent to removal of this action, this Court declines to exercise its discretionary declaratory judgment jurisdiction. Under the circumstances of this case, removal was not objectively unreasonable. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Therefore, the Whites' Motion for Fees and Costs (Doc. 10) is denied.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

September 26, 2014